IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
ABERDEEN DIVISION

DAVID GARLAND ATWOOD, II                                                    PLAINTIFF

V.                                              CIVIL ACTION NO. 1:12-CV-168-SA-DAS

MIKE CHENEY,
JAMES JACKSON, and
TIM NAIL                                                                   DEFENDANTS

MEMORANDUM OPINION

      This case arises out of an arson investigation into a house fire that ultimately resulted in the Plaintiff's arrest. Plaintiff alleges, *inter alia*, that the Defendants violated his rights protected by the Fourth, Fourteenth, First, and Eighth Amendments to the United States Constitution, and filed this suit under 42 U.S.C. §1983. Tim Nail, the arresting officer, and James Jackson, the investigating fire marshal, now request summary judgment in their favor, and assert that they are entitled to qualified immunity on all of the Plaintiff's claims [90, 213]. Mike Chaney,[1] the State Fire Marshal and Commissioner of Insurance now requests summary judgment in his favor on the basis that the Plaintiff has not alleged any personal involvement by him in the alleged constitutional violations, and argues that Section 1983 does not create supervisory liability [216]. The Plaintiff requested, and the Court granted, additional discovery on the qualified immunity issue.[2] This additional discovery period is now concluded and the Defendants' motions for summary judgment are ripe for review.[3]

---

[1] Chaney's last name is misspelled in a variety of ways in the record and pleadings. The Court notes that "Chaney" is the correct spelling.
[2] The Plaintiff now requests further discovery under Federal Rule of Civil Procedure 56(d). *See* Motion [222]. The Court has granted numerous requests by the Plaintiff for additional time, and has already granted additional discovery on the qualified immunity issue. *See i.e.* Orders [165, 205]. The Plaintiff's instant renewed motion for

*Factual and Procedural Background*

In the early morning hours of November 11, 2009, a lake house in Attala County, Mississippi owned by Emmet Atwood, the Plaintiff's grandfather, burned to the ground. Tim Nail, a Deputy with the Attala County Sheriff's Department,[4] responded to the scene after a call by Cade Atwood, the Plaintiff's uncle who lived adjacent to the burned house. According to Nail, Cade Atwood indicated that he suspected that the Plaintiff started the fire. Nail contacted Fire Marshal James Jackson to assist in investigating the fire, which he suspected was arson. Later that same day, Nail spoke with the homeowner Emmet Atwood. According to Nail, Emmet Atwood also indicated that he suspected that the Plaintiff started the fire.[5] Nail documented what remained of the house and scene by taking photographs, which included photographs of several footprints found nearby. The cause of the fire was never determined.

On November 13, 2009, the Plaintiff and his boyfriend Joshua Chamblee gave written statements to the Sheriff's Department indicating that they were together near Starkville, Mississippi on the night of the fire. According to the Plaintiff, he and Chamblee also provided their shoe sizes and impression to the Sheriff's Department at that time. Soon thereafter, Nail procured a subpoena for Chamblee and the Plaintiff's cell phone records, including location

---

discovery does not raise any new or specific grounds as to why discovery should be prolonged in this case. Rule 56(d) "may not be invoked by the mere assertion that discovery is incomplete; the opposing party must demonstrate how the additional time will enable him to rebut the movant's allegations of no genuine issue of material fact." *Leatherman v. Tarrant Cnty. Narcotics Intelligence & Coordination Unit,* 28 F.3d 1388, 1396 (5th Cir. 1994) (quotation marks and citation omitted); *see also Washington v. Allstate Ins. Co.,* 901 F.2d 1281, 1285 (5th Cir. 1990) (affirming denial of Rule 56(d) motion and noting that a "nonmovant may not simply rely on vague assertions that discovery will produce needed, but unspecified, facts"); *Fontenot v. Upjohn Co.,* 780 F .2d 1190, 1194 (5th Cir. 1986). For these reasons, that request [222] is denied. In addition, the substance contained in the numerous redundant discovery requests contained in motions [100, 162, 190], have already been addressed by this Court, therefore, these motions are denied.

[3] The Plaintiff has requested additional time to respond the Defendants' summary judgment motions, and has filed some out of time and supplemental responses on the docket. This request is unopposed, and the motion [124] is therefore granted. The Plaintiff's responses have been considered by the Court.

[4] Tim Nail is now the Sheriff of Attala County. For purposes of this case, Nail was at all relevant times a deputy in that department, and William Lee was the Sheriff.

[5] Emmet Atwood provided a list of several other acts of vandalism, unrelated to the lake house, that he attributed to the Plaintiff.

information. Ultimately, the cell phone location data, and shoe impressions did not implicate Chamblee or the Plaintiff.

Nail turned the investigation over to the State Fire Marshal's office. Commissioner Chaney instructed Fire Marshal James Jackson to work the case and to arrest the person who started the fire if he obtained enough evidence. On March 3, 2010, Chamblee met with Jackson at a restaurant in Carthage, Mississippi at Jackson's request. According to Jackson, he informed Chamblee that Emmet Atwood was offering a $20,000 reward for information leading to the arrest of the person who started the fire. Chamblee indicated that he was no longer personally involved with the Plaintiff, and gave a second statement again indicating that he and the Plaintiff were together in Starkville on the night in question.

More than a year later, at the beginning of June 2011, Jackson had several conversations with Chamblee's mother Teresa Lyles. In these conversations, Jackson "explained to her the severity of the crime and that Joshua was an accessory to the crime even though he did not strike the match." Jackson encouraged Lyles to get Chamblee to contact him.[6]

Jackson contacted Lyles again on July 1, 2011, and made several subsequent unsuccessful attempts to locate Chamblee. On July 9, 2012, Jackson and several associates traveled to Leake County, where Lyles resided, and persuaded the Leake County Sheriff to talk to Lyles on their behalf in an attempt to locate Chamblee. The Sheriff "advised [Lyles] of the severity of the case, and explained that if Joshua [Chamblee] did not come and speak with the State Fire Marshal's Office, a warrant would be issued for his arrest." Jackson obtained a warrant for Chamblee's arrest on July 27, 2011 from the Attala County Justice Court.[7]

---

[6] By this time Chamblee was residing outside the state of Mississippi.
[7] There is no indication in the record as to what the charges in the arrest warrant were or on what basis it was issued.

3

That same day, Jackson and several associates traveled to the Neshoba County Fair to talk to Lyles again. She informed them that Chamblee was traveling home from out of state, and that she would make sure he was at the Leake County Sheriff's office on July 29, 2011. Jackson did not inform Lyles that he already had a warrant for Chamblee's arrest.

Chamblee appeared at the Leake County Sheriff's office on July 29 as promised. Jackson informed Chamblee "if he cooperated with us and testified against David Atwood for the State, he would receive witness immunity and not be in any further trouble."

At this time, Chamblee gave a third written statement to Jackson, this time implicating the Plaintiff in the fire. Chamblee's signed statement reads:

> I was at work from 4 to close that night. I got off and David Atwood wanted to go for a ride didn't know where we was going. We got to a place and stopped. When I stepped out the car was in a field or something right of the road. We got started to walk around walked through some bushes and a dirt road show a house. David Atwood walked behind the house and then he came back to where I was. We walked back to the car. I turned to look and saw flames in the air. Afterwards he said he burned down his grandfather's house. Then went back to my apartment in Starkville. (he had a bag of some stuff, didn't know what was in it it was plastic bag!) (we were driving about an hour or so)[8]

That same day, Jackson appeared before Ronald Stewart, the Attala County Justice Court Judge, and presented him with a general affidavit with his signature. The affidavit states: "David Garland Atwood, on or about the 11th day of November 2009 in the said County did unlawfully, willfully, maliciously, and feloniously set fire to and burn a dwelling house house [*sic*] the property of Emmitt Atwood located on Youth Court Road." According to Jackson, he also presented Chamblee's third statement. It is undisputed that Chamblee's third statement was the only evidence implicating the Plaintiff in the fire, and that the cause of the fire was never

---

[8] An audio recording of this statement was also made.

determined.[9] It is also undisputed that Jackson did not present any other facts or evidence to Judge Stewart.

Based on Jackson's application, Judge Stewart issued a warrant for the Plaintiff's arrest on July 29, 2011. A few days later, on August 1, 2011, the Plaintiff turned himself in at the Attala County Sheriff's office and was taken into custody by Deputy Nail. The Plaintiff was charged with arson, and bond was set at $50,000.00. After posting $5,000.00 as bail, the Plaintiff was released that same day. After the Plaintiff's arrest Commissioner Chaney instructed Jackson to take the case to the grand jury.

In October of 2011, Judge Stewart held a preliminary hearing at the Plaintiff's request. Jackson and Nail testified at the hearing, and the Plaintiff was represented by Counsel. Judge Stewart again found that probable cause existed to support a charge of arson against the Plaintiff and sent the case to a grand jury.

Although scheduled to testify, Chamblee did not appear before the grand jury. A warrant was issued for his arrest, and after he was arrested in Indiana, he was extradited back to Mississippi to face charges for accessory after the fact to arson.

Jackson and Nail testified before the grand jury, and an audio recording of Chamblee's third statement was played for the grand jury. The grand jury did not indict the Plaintiff.

Under the current posture of this case, the Plaintiff is pursuing claims under 42 U.S.C. §1983 for violations of his rights protected by the Fourth, Fourteenth, First, and Eighth Amendments to the United States Constitution. Plaintiff sues Mike Chaney, the Mississippi Insurance Commissioner, and Fire Marshal James Jackson, in their individual capacities, and

---

[9] The Defendants allege that no accidental cause of the fire was ever discovered, however conspicuously no evidence of an intentional cause was discovered either.

Tim Nail, an Attala County Sheriff's Deputy in his individual and official capacity.[10] Nail and Jackson now request summary judgment in their favor, arguing that they are entitled to qualified immunity on all of the Plaintiff's claims. Chaney requests summary judgment in his favor arguing that the Plaintiff has not alleged any facts that support a claim against him, and that Section 1983 does not create supervisory liability.

*Qualified immunity*

Qualified immunity protects government officials from liability for civil damages to the extent that their conduct is objectively reasonable in light of clearly established law. *Crostley v. Lamar Cty., Texas*, 717 F.3d 410, 422-24 (5th Cir. 2013) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S. Ct. 2727, 73 L. Ed. 2d 396 (1982); *Kinney v. Weaver*, 367 F.3d 337, 346 (5th Cir. 2004)). "[T]he usual summary judgment burden of proof is altered in the case of a qualified immunity defense." *Wolfe v. Meziere*, 566 F. App'x 353, 354 (5th Cir. 2014) (citing *Michalik v. Hermann*, 422 F.3d 252, 262 (5th Cir. 2005); *Bazan ex rel. Bazan v. Hidalgo Cnty.*, 246 F.3d 481, 489 (5th Cir. 2001)). "An officer need only plead his good faith, which then shifts the burden to the plaintiff, who must rebut the defense by establishing that the officer's allegedly wrongful conduct violated clearly established law." *Id*. The Plaintiff "cannot rest on conclusory allegations and assertions but must demonstrate genuine issues of material fact regarding the reasonableness of the officer's conduct." *Id*.

---

[10] Official-capacity suits "'generally represent only another way of pleading an action against an entity of which an officer is an agent.'" *Kentucky v. Graham*, 473 U.S. 159, 165-66, 105 S. Ct. 3099, 3105, 87 L. Ed. 2d 114 (1985) (citing *Monell v. New York City Dep't of Social Servc.,* 436 U.S. 658, 690, n. 55, 98 S. Ct. 2018, 2035, n. 55, 56 L. Ed. 2d 611 (1978)). "As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity. *Id*. (citing *Brandon v. Holt*, 469 U.S. 464, 471, 105 S. Ct. 873, 877, 83 L. Ed. 2d 878 (1985)). The docket reflects that Attala County was never served with the Complaint in this case. Further, the Plaintiff has not set forth any facts or elements necessary to establish a claim for municipal liability. *See Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001) (describing the elements plaintiffs must prove to establish municipal liability under § 1983 in accordance with *Monell*, 436 U.S. at 691–94, 98 S. Ct. 2018, and holding that municipal liability under § 1983 may not be predicated on a theory of *respondeat superior*). The Plaintiff's official capacity claims, to the extent any were alleged in his original complaint, are deemed abandoned, and are dismissed.

"A plaintiff can overcome a qualified immunity defense by showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Allen v. Cisneros*, 815 F.3d 239, 244 (5th Cir. 2016) (quoting *Ashcroft v. al–Kidd,* 563 U.S. 731, 131 S. Ct. 2074, 2080, 179 L. Ed. 2d 1149 (2011); *Harlow*, 457 U.S. at 818, 102 S. Ct. 2727). The second prong is satisfied "only if 'the state of the law at the time of the incident provided fair warning to the defendants that their alleged [conduct] was unconstitutional.'" *Kimbriel v. City of Greenville, Miss.*, No. 15-60489, 2016 WL 1719108, at *2 (5th Cir. Apr. 28, 2016) (quoting *Cass v. City of Abilene*, 814 F.3d 721, 728 (5th Cir. 2016)*; Tolan v. Cotton*, ___ U.S. ___, 134 S. Ct. 1861, 1866 (2014)). The Court may conduct this two-pronged inquiry in any order. *Crostley*, 717 F.3d at 422-24 (citing *Pearson v. Callahan*, 555 U.S. 223, 236, 129 S. Ct. 808, 172 L. Ed. 2d 565 (2009)).

*Discussion and Analysis*

In his Complaint [1, 99 (Amended)] the Plaintiff alleges that the Defendants violated his constitutional rights protected by the Fourth, Fourteenth, First, and Eighth Amendments, the Court will address each alleged violation in turn.

*Fourth Amendment – Illegal Arrest*[11]

"In order to establish a Fourth Amendment violation for illegal arrest, a plaintiff must show that the officer did not have probable cause to arrest him." *McAllister v. Desoto Cty., Miss.*, 470 F. App'x 313, 318-19 (5th Cir. 2012) (citing *Haggerty v. Tex. S. Univ.*, 391 F.3d 653, 655 (5th Cir. 2004)). "The right to be free from arrest without probable cause is a clearly established

---

[11] The Plaintiff sometimes refers to his Fourth Amendment claim as one for "false imprisonment." The claim was briefed and argued as an illegal arrest claim, and the Court will treat the claim as such despite this occasional irregular use of nomenclature.

constitutional right."[12] *Brooks v. City of W. Point, Miss.*, No. 14-60357, 2016 WL 556360, at *2 (5th Cir. Feb. 11, 2016) (citing *Mangieri v. Clifton,* 29 F.3d 1012, 1016 (5th Cir. 1994)).

This Court uses an objective standard to determine whether an officer was reasonable after taking into account the totality of the circumstances at the time of the arrest. *Crostley*, 717 F.3d at 422-23 (citing *Beck v. Ohio*, 379 U.S. 89, 91, 85 S. Ct. 223, 13 L. Ed. 2d 142 (1964); *Freeman v. Gore,* 483 F.3d 404, 411 (5th Cir. 2007) ("[T]he court applies an objective standard based on the viewpoint of a reasonable official in light of the information then available to the defendant. . . ."); *United States v. Maslanka*, 501 F.2d 208, 212 (5th Cir. 1974) ("To determine the presence or absence of probable cause to arrest, one must consider the totality of the circumstances surrounding the arrest")).[13]

"[P]robable cause requires only a probability or substantial chance of criminal activity, not an actual showing of such activity." *Curtis v. Anthony*, 710 F.3d 587, 595 (5th Cir. 2013) (citing *Ill. v. Gates*, 462 U.S. 213, 245 n. 13, 103 S. Ct. 2317, 76 L. Ed. 2d 527 (1983)). Thus, "[p]robable cause exists when the totality of facts and circumstances within a police officer's knowledge at the moment of arrest are sufficient for a reasonable person to conclude that the suspect had committed or was committing an offense." *Curtis*, 710 F.3d at 595 (citing *Mack v. City of Abilene*, 461 F.3d 547, 552 n. 1 (5th Cir. 2006)). A trial court "considers the expertise and experience of the law enforcement officials when considering what a 'reasonable person' would have concluded." *Id*.

When as in this case, the arrest is made pursuant to a warrant, "if facts supporting an arrest are placed before an independent intermediary such as a magistrate or grand jury, the

---

[12] The Plaintiff has asserted that the right to be free from arrest without probable cause is clearly established, and the Defendants have not rebutted this assertion.

[13] Because the constitutional violation for illegal arrest accrues "at the moment of arrest", Judge Stewart's later findings at the preliminary hearing are not relevant to the analysis of this claim. *McAllister*, 470 F. App'x at 318-19 (citing *Haggerty*, 391 F.3d at 655; *Crostley*, 717 F.3d at 422-23).

8

intermediary's decision breaks the chain of causation" for the Fourth Amendment violation. *Jennings v. Patton*, 644 F.3d 297, 300-01 (5th Cir. 2011) (citing *Cuadra v. Houston Indep. Sch. Dist.*, 626 F.3d 808, 813 (5th Cir. 2010)) (citation and internal quotation marks omitted). However, "this insulation is not absolute; the chain of causation remains intact if it can be shown that the deliberations of that intermediary were in some way tainted by the actions of the defendant." *Id*.

"[T]he chain of causation is broken only where all the facts are presented to the independent intermediary where the malicious motive of the law enforcement officials does not lead them to withhold any relevant information from the independent intermediary." *Russell v. Altom*, 546 F. App'x 432, 437 (5th Cir. 2013) (citing *Cuadra*, 626 F.3d at 813). However, "even an officer who acted with malice in procuring the warrant or the indictment will not be liable if *the facts* supporting the warrant or indictment are put before an impartial intermediary such as a magistrate or a grand jury." *Craig v. Dallas Area Rapid Transit Auth.*, 504 F. App'x 328, 332 (5th Cir. 2012) (citing *Hand v. Gary,* 838 F.2d 1420, 1427 (5th Cir. 1988)). A defendant will not be immune if, on an objective basis, it is obvious that no reasonably competent officer would have concluded that the defendant's actions were lawful; but if officers of reasonable competence could disagree on the issue, immunity should be recognized. *McAllister v. Desoto Cty., Miss.*, No. 2:09-CV-163-SA, 2011 WL 2516260, at *3 (N.D. Miss. June 23, 2011), *aff'd,* 470 F. App'x 313 (5th Cir. 2012) (citing *Malley v. Briggs,* 475 U.S. 335, 341, 106 S. Ct. 1092, 89 L. Ed. 2d 271 (1986)).

*Arrest - Deputy Nail*

Despite the Plaintiff's unsubstantiated allegations to the contrary, it is undisputed that Nail's role in the Defendant's arrest was taking him into custody at the Sheriff's office when the

Plaintiff turned himself in. As the Fifth Circuit has explicitly stated, "[w]e have been 'unwilling . . . to extend [§ 1983] liability . . . beyond the affiant and person who actually prepared, or was fully responsible for the preparation of, the warrant application.'" *Jennings*, 644 F.3d at 301 (citing *Michalik*, 422 F.3d at 261). "Although issues of fact may exist as to the roles that [defendants] played in the investigation, and in providing some of the information to [the affiant], these issues of fact are not material to the [claim for causing a warrant to be issued without probable cause] because none of the evidence suggests that [defendants] prepared or presented the warrant or were fully responsible for its preparation or presentation. *See id*; *see also Hampton v. Oktibbeha Cty. Sheriff Dep't*, 480 F.3d 358, 364 (5th Cir. 2007) (granting qualified immunity to defendants who were neither the affiant nor the person who actually prepared the warrant application).

Although Nail had a role in the initial phase of the arson investigation, it is undisputed that he did not participate in procuring Chamblee's third statement or the warrant for the Plaintiff's arrest. Nail relied on a facially valid arrest warrant when he took the Plaintiff into custody, and there is no competent evidence in the record that indicates he had any knowledge of the circumstances leading to the issuance of the warrant. For these reasons, Nail's motion for summary judgment is granted, and the Court finds that he is entitled to qualified immunity on the Plaintiff's claim for illegal arrest brought under the Fourth Amendment.

*Arrest – Fire Marshal Jackson*

Unlike Nail, Jackson was the driving force behind the investigation and the procurement of the arrest warrant. It is undisputed that the only fact or evidence Jackson presented to Judge Stewart was Chamblee's third statement. The Plaintiff argues that Jackson intentionally withheld exculpatory facts and evidence, and deprived Judge Stewart of the ability to make an

independent, objective judgment based on all the relevant information. Jackson counters that Judge Stewart's determination shields him from liability.

The Court rejects Jackson's argument that applying for a warrant *per se* provides him with immunity because "the warrant requirement imposes an obligation to 'set forth particular facts and circumstances underlying the existence of probable cause, so as to allow the magistrate to make an *independent* evaluation of the matter.'" *Winfrey v. San Jacinto Cty.*, 481 F. App'x 969, 979 (5th Cir. 2012) (quoting *Franks v. Delaware*, 438 U.S. 154, 164, 98 S. Ct. 2674, 2680, 57 L. Ed. 2d 667 (1978)). This obligation "extends to providing facts concerning the reliability of the information and the credibility of its source and to avoiding "deliberately or reckless[ly] false statement[s]." *San Jacinto Cty.*, 481 F. App'x at 979 (citing *Franks,* 438 U.S. at 164–65, 98 S. Ct. 2674) (describing the use of such statements in a warrant affidavit as "an unthinkable imposition upon [a magistrate's] authority").

In this case, the only information Judge Stewart had available was Jackson's application, which is merely a generic recitation of the elements of the crime of arson, and Chamblee's third statement. Although the statement of an accomplice may, even without more be enough to establish probable cause, the circumstances under which the statement was obtained, the reliability of the witness, and the corroboration of the facts contained in the statement are all relevant to the probable cause determination. *See Bryant ex rel. Bryant v. City of Ripley, Miss.*, No. 3:12-CV-37-B-A, 2015 WL 686032, at *4 (N.D. Miss. Feb. 18, 2015) (noting that uncorroborated statements from an accomplice can establish probable cause); *Brown v. Hill,* 438 F. App'x 336, 337 (5th Cir. 2011) (probable cause existed where defendant's three accomplices informed police of defendant's participation in the crime).[14]

---

[14] It is important to note, that while uncorroborated statements from an accomplice can establish probable cause, even in these cases there were many indicators of reliability and credibility. In *Bryant*, 2015 WL 686032, the

In the instant case, multiple factors call into question both the reliability of the information contained in Chamblee's third statement, and his credibility. Chamblee's third statement was given under both the promise of a $20,000.00 reward, and the threat of arrest, after Chamblee's relationship with the Plaintiff ended on bad terms.[15] Jackson, with no evidence that the fire was indeed arson, pursued Chamblee for more than a year. Jackson tracked Chamblee's mother down at several different locations, and threatened her with her son's arrest in an attempt to enlist her in his mission to convince Chamblee to implicate the Plaintiff in the fire. Chamblee gave two previous statements providing an alibi for the Plaintiff. In addition, Chamblee's third statement is severely lacking in detail. Chamblee does not know the date of the fire, he does not mention specifics about the location, how far away it was, what time it was, whether the house was on a lake, or even how and specifically where the fire was started. Other than a single hearsay statement allegedly made by the Plaintiff, there is no indication in Chamblee's third statement that any crime was committed. In summary, there are strong indications that Chamblee is not a credible witness, and that the information in his third statement, is both vague and unreliable.

In addition to the problems with Chamblee's statement, Jackson ignored several pieces of exculpatory evidence. The Plaintiff and Chamblee's cell phone records did not place them at the scene of the fire, their shoe impressions did not match the footprints found at the scene, and there is no evidence that the fire was started intentionally. While probable cause hearings are not adjudications of guilt or innocence, it is the function of the warrant-issuing magistrate to

---

accomplice was caught on film at the scene of the crime, and in *Brown*, 438 F. App'x 336, three accomplices with consistent stories implicated Brown, and there was evidence, albeit contested, that Brown had confessed to the crime. In the instant case, there is no evidence placing Chamblee at the scene, nor are there any eyewitness accounts or other evidence corroborating his story.

[15] There is information in the record indicating that Chamblee threatened to make or made complaints to the police about the Plaintiff after their relationship ended.

determine the reliability of information and credibility of affiants in deciding whether the requirement of probable cause has been met. *Franks*, 438 U.S. at 160, 98 S. Ct. 2674. As a practical matter, to properly and fully discharge this function, the magistrate must have the relevant information before him.

Bearing in mind the totality of the circumstances, the Court finds that any reasonably well trained officer in Jackson's position should have known that his affidavit failed to establish probable cause and would not have applied for a warrant. Jackson failed to provide Judge Stewart with important details, exculpatory information, and failed to inform Judge Stewart of the problems with both Chamblee's credibility, and the reliability of the information in his third statement. Jackson's failures deprived Judge Stewart of the opportunity to conduct an independent evaluation. "'When the Fourth Amendment demands a factual showing sufficient to comprise "probable cause," the obvious assumption is that there will be a *truthful* showing.'" *San Jacinto Cty.*, 481 F. App'x at 979 (citing *Franks,* 438 U.S. at 164–65, 98 S. Ct. 2674). For these reasons, Judge Stewart's probable cause determination that ultimately resulted in the Plaintiff's arrest was tainted, and Jackson's actions in applying for the warrant were not objectively reasonable because they created the unnecessary danger of an illegal arrest. *See Malley*, 475 U.S. at 345-46, 106 S. Ct. 1092.

The Court finds that, relative to his Fourth Amendment illegal arrest claim, the Plaintiff has carried his burden of demonstrating that genuine issues of material fact exist regarding the reasonableness of Jackson's conduct. *Wolfe*, 566 F. App'x at 354 (citing *Michalik*, 422 F.3d at 262; *Bazan*, 246 F.3d at 489). Jackson's motion for qualified immunity is denied as to this claim.

*Arrest – Commissioner Chaney*

As to the Plaintiff's Fourth Amendment claim against Chaney, the Fifth Circuit has explicitly stated, "[w]e have been 'unwilling . . . to extend [§ 1983] liability . . . beyond the affiant and person who actually prepared, or was fully responsible for the preparation of, the warrant application.'" *Jennings*, 644 F.3d at 301 (citing *Michalik*, 422 F.3d at 261). There is simply not a factual basis in the record to sustain an illegal arrest claim against Chaney. Furthermore, it is well established in this Circuit that Section 1983 does not "create supervisory or *respondeat superior* liability." *Huaracha v. CDCR*, No. 4:15-CV-152-SA, 2015 WL 8731850, at *1 (N.D. Miss. Dec. 11, 2015) (quoting *Oliver v. Scott*, 276 F.3d 736, 742 & n.6 (5th Cir. 2002)); *see also Thompkins v. Belt*, 828 F.2d 298, 304 (5th Cir. 1987) ("Under § 1983, supervisory officials cannot be held liable for the actions of subordinates under any theory of vicarious liability")). "In order to hold a supervisory official responsible for a § 1983 violation, a plaintiff must establish either (1) the official's personal participation in the alleged wrong, or (2) 'a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation.'" *Huaracha*, 2015 WL 8731850, at *1 (citing *Thompkins*, 828 F.2d at 304; *see also Murphy v. Kellar*, 950 F.2d 290, 292 (5th Cir. 1992)). For these reasons, defendant Chaney's motion for summary judgement as to the Plaintiff's Fourth Amendment claim is granted.

*Fourteenth Amendment – Malicious Prosecution*

Next, the Plaintiff asserts a claim for malicious prosecution and abuse of process under the Due Process Clause of the Fourteenth Amendment.[16] At the outset, the Court notes that the allegations of this claim are coextensive with his Fourth Amendment claim. His malicious prosecution claim merely asserts that he was arrested without probable cause in violation of his right to due process, there is no injury alleged other than his arrest. Although "the initiation of

---

[16] In his Amended Complaint [99] the Plaintiff states "[b]y maliciously prosecuting Atwood, and abusing court and legal process in doing so, for vindictive and evil purposes, the defendants violated Atwood's rights under the U.S. Constitution."

14

criminal charges without probable cause may set in force events that run afoul of explicit constitutional protection—the Fourth Amendment if the accused is seized and arrested, for example—" there is no "substantive right under the Due Process Clause of the Fourteenth Amendment to be free from criminal prosecution except upon probable cause." *Cole v. Carson*, 802 F.3d 752, 765-66 (5th Cir. 2015) (citing *Castellano v. Fragozo*, 352 F.3d 939, 953 (5th Cir. 2003)). Because the only injury alleged by the Plaintiff relative to his malicious prosecution claim is his arrest, for which he has alleged a separate Fourth Amendment claim as outlined above, he has failed to plead a separately cognizable constitutional violation under the Fourteenth Amendment.[17] For this reason, the Defendants' motions for summary judgment as to the Plaintiff's malicious prosecution claim are granted.

*First Amendment – Retaliation*

In his Complaint [1], the Plaintiff also alleges that he was arrested in retaliation for publishing a book in June of 2011, in violation of his rights protected by the First Amendment. According to the Plaintiff, his book exposes illegal and unethical activities, including the importation of large quantities of cocaine from Central America, of current and former Warren County Sheriffs Martin Pace and Paul Barret, and implicates other Vicksburg and Warren County judges, politicians, and district attorneys in these and other illegal activities. The Plaintiff alleges that Chaney is close personal friends with some of the people highlighted in his book, and that Chaney instructed Jackson to pursue and prosecute him for the arson only because of Chaney's friendship with them.

---

[17] *See Cole*, 802 F.3d at 767 for a discussion of the interplay between claims brought under the Fourth and Fourteenth Amendments. Notably, in this case the Plaintiff has not alleged that the Defendants fabricated evidence, and has only alleged a claim based on his pre-trial deprivation of liberty. *See also Cuadra*, 626 F.3d 808 (holding that claims based on alleged pretrial deprivations of constitutional rights, under the holding in *Albright v. Oliver*, 510 U.S. 266, 114 S. Ct. 807, 127 L. Ed. 2d 114 (1994), should be brought under the Fourth Amendment).

"The First Amendment prohibits not only direct limits on individual speech but also adverse governmental action against an individual in retaliation for the exercise of protected speech activities." *Cass*, 814 F.3d at 729 (quoting *Keenan v. Tejeda,* 290 F.3d 252, 258 (5th Cir. 2002)). To establish a First Amendment retaliation claim, a plaintiff must show that: "(1) he was engaged in constitutionally protected activity; (2) the defendant's actions caused him to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity, and (3) the defendant's adverse actions were substantially motivated by the constitutionally protected conduct." *Id*.

The parties have not addressed the first two elements of this claim. As to the third element, the Court finds that the Plaintiff has not brought forth any competent evidence that the Defendants' actions were motivated by the publication of his book.[18] Although this Court, when considering a motion for summary judgment, must consider all facts and evidence in the light most favorable to the nonmoving party," a plaintiff "cannot rest on conclusory allegations and assertions but must demonstrate genuine issues of material fact regarding the reasonableness of the [defendants'] conduct. *Cass*, 814 F.3d at 728 (citing *Haverda v. Hays Cty.*, 723 F.3d 586, 591 (5th Cir. 2013); *Wolfe*, 566 F. App'x at 354 (citing *Michalik*, 422 F.3d at 262; *Bazan*, 246 F.3d at 489).

In this case, the Plaintiff's claim brought under the First Amendment rests wholly on unsupported allegations. There is simply no evidence connecting the allegedly protected speech, to any of the Defendants' conduct. Because there is no evidence that any of the Defendants were substantially motivated by the publication of the Plaintiff's book, "there can be 'no genuine

---

[18] The Plaintiff makes much ado over a faxed document sent by Nail to the Warren County Sheriff's Department in 2010 concerning an arrest warrant for the Plaintiff on an unrelated charge. There is no connection between this document and the arson investigation, and nothing in the record indicates that this is anything more than a routine interdepartmental communication.

[dispute] as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Cass*, 814 F.3d at 729 (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986); FED. R. CIV. P. 56). For this reason, the Defendants' motions for summary judgment as to the Plaintiff's claim for First Amendment retaliation are granted.

*Eighth Amendment – Excessive Bail*

Finally, the Plaintiff asserts a claim under the Eighth Amendment alleging that the $50,000 bond set by Judge Stewart was excessive. The Plaintiff also alleges that Jackson asked the Judge to set bail at $200,000. This allegation is unsupported by any competent evidence.[19] Further, the Plaintiff has not set forth any arguments outlining the merits of this claim. Thus, it is undisputed, based on the competent summary judgment evidence in the record, that Judge Stewart set the amount of the Plaintiff's bond, and that Jackson did not play a role in that determination. Because a plaintiff "cannot rest on conclusory allegations and assertions", there is no evidence that Jackson, Nail, or Chaney were involved in the act that allegedly violated the Plaintiff's constitutional right. Thus, the Defendants cannot be liable under §1983, and are entitled to qualified immunity on this claim. *See Cass*, 814 F.3d at 729; *Thompson v. Steele,* 709 F.2d 381, 382 (5th Cir. 1983) ("Personal involvement is an essential element of a civil rights cause of action.") (citing *Rizzo v. Goode,* 423 U.S. 362, 96 S. Ct. 598, 604–05, 607, 46 L. Ed. 2d 561 (1976)).

---

[19] "Bail is excessive under the Eighth Amendment only when it is set in an amount greater than that required for reasonable assurance of the presence of the defendant." *Granger v. Slade*, 361 F. Supp. 2d 588, 596 (S.D. Miss. 2005) (quoting *United States v. Salerno,* 481 U.S. 739, 752, 107 S. Ct. 2095, 2104, 95 L. Ed. 2d 697 (1987)); *see also Pugh v. Rainwater*, 572 F.2d 1053, 1057 (5th Cir. 1978) (the determination whether bail is excessive turns on "a balancing of the pre-trial detainee's right to . . . be free from punishment prior to conviction, against the state's interest in ensuring his presence at a later trial"). The record in this case demonstrates that the Plaintiff was released after a matter of hours, and after paying $5,000 bail.

*Conclusion*

Defendant Nail's Motion for Summary Judgment [90] is GRANTED, and he is entitled to qualified immunity on all of the Plaintiff's claims.

Defendant Jackson's Motion for Summary Judgment [213] is GRANTED in part, and DENIED in part. Jackson is not entitled to qualified immunity on the Plaintiff's Fourth Amendment claim for illegal arrest. Jackson's request for summary judgment is granted on all other claims.

Defendant Chaney's Motion for Summary Judgment [216] is GRANTED.

The Plaintiff's Motions for additional discovery [100, 162, 190, 222] are DENIED.[20]

The Plaintiff's Motion for Extension of Time [124] is GRANTED.

The Plaintiff's sole remaining claim is his Fourth Amendment claim against Defendant Jackson. All other claims and defendants are DISMISSED with prejudice.

**SO ORDERED on this the 14th day of July, 2016.**

      /s/ Sharion Aycock              
**UNITED STATES DISTRICT JUDGE**

---

[20] Although these Motions are styled in various ways, the Court notes that the substance of the requests contained therein is for additional discovery.